ALFRED T. CREED, Plaintiff, v. RICHARD LOUIS HARTLEY, Defendant, ANNA MAY CREED, Plaintiff, v. RICHARD LOUIS HARTLEY, Defendant.

(*April* 30, 1962.)

STIFTEL, J., sitting:

*Claud L. Tease* for plaintiffs.

*Everett F. Warrington* for defendant.

Superior Court for Sussex County, Nos. 15 and 16, Civil Action, 1960.

STIFTEL, Judge.

Anna May Creed (plaintiff) was injured in an automobile accident on February 11, 1959. She sued for her personal injuries and pain and suffering. Her husband, Alfred T. Creed, brought an action for hospital and medical expenses and loss of consortium. These actions were consolidated.

Plaintiff's action was filed in two counts. The first count alleges ordinary negligence. In this count, plaintiff claims she was not a guest because her brother, Richard Louis Hartley (defendant), had requested that she accompany him to her daughter's home for the purpose of showing him the way. She claims, therefore, that he derived a benefit from her presence in the automobile and that, consequently, she was not a guest.

In her second count, plaintiff argues that even though she be classified as a guest, she is nevertheless entitled to recover from the defendant because he was guilty of "wanton conduct".

First, I must decide whether or not plaintiff

was a guest. If plaintiff paid for her transportation then the guest statute does not apply. Payment need not be made in money; *Elliott v. Camper*, 8 W.W.Harr. 504, 194 A. 130, 133; it may take many forms. *Wilkes v. Melice*, 9 Terry 206, 100 A.2d 742, 744. After an analysis of the facts and the law pertaining thereto, I conclude that this plaintiff was a guest in the automobile of her brother.

■ ■ I turn now to the second count of the complaint. I have already decided that the plaintiff was a guest passenger at the time of the accident. In this case the defendant is liable to her only if his conduct was "wanton". What does "wanton conduct" mean? *Law v. Gallegher*, 9 W.W.Harr. 189, 194-195, 197 A. 479, 482, defined it as follows:

"Wanton conduct * * * may be said to be such conduct as exhibits a conscious indifference to consequences in circumstances where probability of harm to another within the circumference of the conduct is reasonably apparent, although harm to such other is not intended."

This definition was reaffirmed by our Delaware Supreme Court in *McHugh v. Brown*, 11 Terry 154, 125 A.2d 583, at p. 586, where Chief Justice Southerland explained:

"The nub of this definition is in the phrase 'conscious indifference'. In homely language it means a foolhardy 'I-don't-care-a-bit-what-happens' attitude."

See, also, *Tyndall v. Rippon*, 5 Terry 458, 61 A.2d 422, 425; *Limes v. Keller*, 365 Pa. 258, 74 A.2d 131, 133 (Sup. Ct. of Pa. interpreted Delaware statute).

[5, 6] Whether there be an issue of wanton conduct must be determined by the facts and circumstances of the individual case. There is no fixed rule for its discovery. *Biddle v. Boyd*, 9 W.W.Harr. 346, 199 A. 479, 480; *Limes v. Keller*, supra, 365 Pa. 258, 74 A.2d at p. 133. Wanton-

ness of conduct exists in each case not alone because the host driver violates warnings, not alone because he speeds, not alone because he is under the influence of alcohol and not alone because he is inattentive to the rules of the road, but because his conduct, made up of a sum total of different factors, manifests a high degree of indifference, with the realization of the possibility of injury to others and an utter disregard of the probable consequences. *Cf. Stevens v. Stevens*, 355 Mich. 363, 94 N.W.2d 858, 863.

██ ██ Some additional factors the courts have considered in determining if wantonness exists are: Defendant's familiarity with the road; abnormal weather conditions, e.g., rain, fog, mist or snow; the type of road, slippery or oily surface; curves in the road; whether the vehicle had lights on when required; reckless passing; going to sleep at the wheel; driving on the wrong side of the road; foolhardy conduct at railroad crossings; and racing with other vehicles. Any factor named, or a combination of them, or more, may be considered by the Court in arriving at its decision on whether or not an issue of wantonness exists. It is the combination of circumstances at the time and place of the accident and during the time immediately prior thereto that makes up the issue of wantonness.

██ The road on which defendant was traveling was wet. His speed was certainly greater than it should have been considering the conditions of the road. He is an individual who has difficulty maneuvering his feet because of an early affliction. He had nine passengers in the car, including four persons in the front seat counting himself. His physical condition and the number of persons in the vehicle required greater than usual caution and driving skill. He readily admits that he was warned about the stop sign when he was approximately 500 feet from it

while his car was crossing a bridge on the road. Yet he did not attempt to slacken his speed until he reached a point about two car lengths from the stop sign. This was the first time he claims he attempted to apply the brakes and reduce his speed. From the bridge to the stop sign, in the meantime, he managed to turn on the radio and light a cigaret, completely ignoring the prior warning of the stop sign ahead. Defendant claims his foot got stuck under the accelerator when he attempted to apply the brakes to slacken the speed of his car and that he became unconscious prior to the impact. This is doubtful.

I believe the combination of circumstances which I have recited and other circumstances mentioned in the record in this case demonstrate a conscious indifference toward the safety of the plaintiff. In arriving at this conclusion, I am well aware that the plaintiff and many of her witnesses exaggerated the speed of the defendant's vehicle and some of his other conduct. Nevertheless, I think the facts before me demonstrate that defendant's conduct exhibited an indifference to consequences in circumstances where probability of harm to the plaintiff within the circumference of his conduct was reasonably apparent.

Plaintiff suffered severe injuries to her foot which required hospitalization and which are permanent in nature. I determine that she is entitled to recover the sum of $9,500 for her injuries and pain and suffering. I determine that her husband is entitled to recover the sum of $1,631.87, plus costs, for hospital and medical expenses and loss of consortium.